IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CINDY CUNNINGHAM,

     Plaintiff,

v.                                  No. 1:17-cv-00583 MLC

DULCE INDEPENDENT SCHOOL DISTRICT,
a New Mexico State Agency, and TOM SAVAGE,
individually and as supervisor of the DULCE
INDEPENDENT SCHOOL DISTRICT,

     Defendants.

## PLAINTIFF'S SECOND MOTION TO COMPEL PROPER RESPONSES TO INTENT-BASED REQUESTS FOR PRODUCTION AND INTERROGATORIES

COMES NOW the Plaintiff, through her counsel, moves this Court, pursuant USCS Fed Rules Civ Proc R 37 (a), USCS Fed Rules of Evid. 501, and Federal and New Mexico common law for an Order compelling the Dulce Independent School District (hereinafter "DISD") to:

a)     Produce all evidence of intent relevant to answering the relevant interrogatories and requests for production (Interrogatories Nos. 10, 12, 13, 15 and RFP Nos. 4 and 17 as specifically identified herein at pp. 3-5), given the centrality of intent to Plaintiff's pled claims;

b)     Produce proper documentation and certification of the remaining oral answers provided during the negotiation process prior to the filing of this Motion;

c)     Pay Plaintiff the costs of this motion and its resulting reply; and

d)     Perform any other act that the Court believes will resolve the discovery dispute between Defendant DISD and Plaintiff fairly and equitably, taking into account the centrality of intent evidence in a discrimination case, *Allen v. Montgomery County*, 788 F.2d 1485, 1488 (11th Cir. 1986); the broad discovery regularly afforded actions enforcing remedial statutes, *Rich v. Martin*

*Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); and the informational asymmetry always present in an employment case. *See EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 620 n.21 (6th Cir. 2013). (meaning different than the usual case, employment cases traditionally involve a situation where the employer has full access to relevant information and considerable incentive to preserve that information, including statutory command, best Human Resources practice, and the power to preserve all evidence of their lawful actions to defeat groundless claims.

### The Discovery Devices Subject to this Motion and the Issues to be Resolved

The Plaintiff has twice written good faith negotiation letters to Defendant DISD related to the sought responses. *See Court Document 45-7; December 19, 2017 Letter from Undersigned to DISD Counsel, attached hereto and included herein as Motion Exhibit One.* Further, two discovery conferences have been held as well. The "Clerk's Notes" for the last discovery conference held January 4, 2018 record properly the Court's allowance of the Motion to Compel in all regards except that it fails to record that the Court gave oral permission for motion practice related to RFP No. 4. *See Court Document 57.* The Court will remember and the tape of the hearing record that the parties discussed the merits of RFP No. 4 at length as it contains Plaintiff's request for all due process notices provided by Defendants to its employees. In any case, in this regard it dovetails and duplicates RFP No. 17. The relevant discovery devices which Plaintiff alleged DISD has answered inadequately are as follows. Following the discovery device there is a brief description of the issues to be resolved by this Motion, related to each discovery device. Since the last Motion to Compel, DISD has propounded a further supplementation to their original and other supplementary responses. Helpfully, the Third Supplementation (made on or about December 6 and 7, 2017) includes all responses and objections. Accordingly, the

2

relevant pages of the "Third Supplemental Answers to Plaintiff Cunningham's First Set of

Written Disovery for Defendant Dulce Independent School District" is *attached hereto and*

*included herein by reference as Motion Exhibit Two:*

**INTERROGATORY NO. 10:**     Please identify each and every allegation of discrimination, conspiracy and/or retaliation that you are aware of being made against you or your employees or agents during 2012 through 2015 inclusive, specify how you became aware of those incidents, identify the supervisor and employee involved, and indicate whether any official action (reporting to any government agency, an internal grievance, an administrative charge or the filing of a lawsuit) was taken by any party to the complaint of discrimination, retaliation and/or conspiracy, and identify the official action with specificity, including party names and case numbers for each such official action.

***ISSUES TO BE RESOLVED HEREIN:***     *Defendant DISD has interpreted the above interrogatory to only include official complaints of discrimination, conspiracy and retaliation. It is further objected to any request for unofficial complaints (meaning oral or written complaints) by admitting that it has no list of the complaints, and that attempting to identify any complaints would necessitate a search of all employee files because of the lack of any list of such complaints. Plaintiff offered to confine the requested complaints to those made against Defendant Savage. Defendant has stated there are no complaints in Savage's employment file or files, and thus the search would be the same. Plaintiff hereby requests:*

*1)     A verified response to the interrogatory stating that DISD keeps no centralized recording of complaints of discrimination and retaliation less formal than Official New Mexico Human Rights Bureau or Equal Employment Opportunity Commission Charges of Discrimination against specific supervisors, and/or*

*2)     A similar verified response stating that DISD has searched its employment files and located no or additional documentation of unofficial complaints, or providing a verified response including each additional complaint identified.*

**INTERROGATORY NO. 12:**     Please identify each and every certificated employee you discharged (meaning pursuant your policy ending their employment before the end of their current contract) or gave discipline to since 2013 through 2016 inclusive, and for each such person provide their position and salary before the challenged employment action, their position and salary after the challenged employment action, as well as their last known contact information (home address, home phone, cell phone, email addresses and new business address and phone).

***ISSUES TO BE RESOLVED HEREIN:***     *Defendant DISD has only responded to the first half of the interrogatory (regarding discharges, lapses, etc.) and has given an oral response to the Court's questioning on that issue stating that no certificated employee was discharged, lapsed or*

*otherwise terminated during 2013 to 2016. Plaintiff requests a verified response setting out the substance of DISD counsel's response to the Court.*

*Further, Plaintiff seeks a response to the second half of the interrogatory regarding "discipline." Plaintiff notes that Defendant's own policy, Dulce Policy G-6100 "Discipline, Suspension, Termination and Discharge of Professional Staff Members," which is present in the Court's files as **Court Document No. 45-01**, sets out that informal discipline is excluded from due process hearings at the **General Provisions for Discipline** section, but that written warnings, suspensions and the like require both pre- and post-discipline hearings at the **Minor Discipline** section. Plaintiff requests a verified response identifying the persons given minor discipline as defined in the policy, as well as answering the additional inquiries for each person. Plaintiff notes that she has specifically pled a Section 1983 procedural due process claim, as well as a Section 1983 claim for denial of equal protection pursuant her disability status. She has also pled a Section 1983 denial of substantive due process claim predicated upon the failure of DISD to honor the fundamental right of notice in due process hearings. Finally, she has pled a Section 1983 claim predicated upon DISD's singling her out for denial of due process. She has also pled a contract claim based upon DISD's denial of procedural due process to her and the breach of her employment contract based on the written contract she had at the time, **Court Document No. 45-02**, incorporating Federal and State Law, and the existence of the policy manual itself.*

**INTERROGATORY NO. 13:**     For each person identified in response to Interrogatory No. 12 above, please indicate if you provided each such employee with notice of your duty to hold a due process hearing related to the discipline or discharge upon their request, and state the date of the correspondence which provided such notice. Also identify the start date of any due process hearings, the hearing officer or officers for the hearing[s], and whether or not each discharge or other discipline was upheld. Finally, please provide each disciplined or discharged employee's religion, race, color, national origin and disability status.

***ISSUES TO BE RESOLVED HEREIN:***     *DISD has provided no substantive response to the Interrogatory, relying on the thus-far inadequate response to Interrogatory No. 12. Plaintiff requests that DISD be ordered to provide a verified response congruent with and supplementing its ordered response to Interrogatory No. 12.*

**INTERROGATORY NO. 15:**     Please identify any and all certificated employees who were provided a due process hearing related to their discipline or discharge by you during calendar years 2013 through 2016 inclusive, and provide their last known home and work addresses, last know home and work phone numbers, their stated race, color, national origin, religion and disability status, and email address.

***ISSUES TO BE RESOLVED HEREIN:***     *DISD has provided no substantive response to the Interrogatory, relying on the thus-far inadequate response to Interrogatory No. 12. Plaintiff requests that DISD be ordered to provide a verified response congruent with and supplementing its ordered response to Interrogatory No. 12.*

**REQUEST FOR PRODUCTION NO. 4.**   Please provide copies of any correspondence in your files, be it emails, letters, memos, notes or other documents or things involving:
a)       any of the Plaintiff's activities during 2010 through 2015, and/or
b)       any of the events alleged in this lawsuit, including specifically any letters sent to employees offering them due process hearings and/or scheduling their post-termination due process hearings.

***ISSUES TO BE RESOLVED HEREIN:***    *DISD has provided no substantive response to the Request, relying on the thus-far inadequate response to Interrogatory No. 12.  Plaintiff requests that DISD be ordered provide a verified response congruent with its ordered response to Interrogatory No. 12, and produce any letters sent during 2010 to 2015 offering due process hearings.*

**REQUEST FOR PRODUCTION NO. 17.**    Please produce copies of any documents related to or comprising the discharge (meaning, according to your policies, the ending of employment before the end-date of the employee's current contract) of any and all certificated teachers or certificated administrators initiated during 2014 to 2016 inclusive, specifically including any discipline or warning notices, any investigative documents, any due process hearing documents, any documents complaining of or contesting the demotion or discharge, and any letters or memos recording the discharge and the requested due process received.

***ISSUES TO BE RESOLVED HEREIN:*** *DISD has provided no substantive response to the Request, relying on the thus-far inadequate response to Interrogatory No. 12.  Plaintiff requests that DISD be ordered provide a verified response congruent with and supplementing its ordered response to Interrogatory No. 12.*

### The Pled Contract and Section 1983 Claims

The Second Amended Complaint which is included in the Court file as **Document No. 46** contains retaliation claims, discrimination claims, failures to follow the requirements of the U. S. Constitution (Section 1983), FMLA, Title VII and New Mexico Human Rights Act statutes and a breach of contract claim.  Defendants have tended to characterize those claims as "scatter-shot" and "shotgun" pleading, as well as labelling this case a disability discrimination case.  Both characterizations are inadequate and limiting in undersigned counsel's opinion, precisely because they misapprehend Plaintiff's intent.

Plaintiff notes that the specific factual allegations of the Second Amended Complaint (at Paragraphs 7-40 on pp. 3-22) lay out a series of DISD's actions, all taken between August and December 2015, which had two things in common, they were illegal and they injured Plaintiff. Plaintiff has pled alternatively a number of intentions behind those actions (including personal animus, discriminatory animus, and retaliatory animus, as well as pleading claims which do not require animus, such as the procedural due process, FMLA interference, and contract claims (though the contract claim explicitly prays for punitive damages, which requires at least a form of personal animus). Undersigned counsel had sufficient evidence to plead all such intentions, but notes that the process of discovery, as well as DISD's instant Responses to Written Discovery will supplement that initial evidence, particularly with regards to the crucial issue of **intention,** and may affect liability herein, damages herein, as well as Plaintiff's overall and trial strategy in this case, including such decisions as voluntary dismissal of some of the claims prior to trial.

This is a consequence of this matter being a modern employment case, where intention is often a required element of the pled claims, but there is little evidence -- such as slurring or admissions of precise intention -- directly disclosing that intent. Plaintiff does not believe this is scatter-shot, it is simply a consequence of the world we live in -- a world where many supervisors know better than to directly evidence their underlying illegal intentions particularly when they are acting illegally. Likewise Plaintiff does not label this case as one of disability discrimination, precisely because a wide variety of intentions are mutually and alternatively pled.

Plaintiff believes the formal discrimination claims and retaliation claims announce their different pled intentions on their face, but includes herein quotation from the contract and Section 1983 claims, as reminders of the variety of illegal actions pled, and the various intentions

6

and motivations that are present in the Second Amended Complaint, **Docket No. 46**, at pp. 19-24

(emphasis added):

## FIRST CAUSE OF ACTION

### Breach of Contract Against Defendant Dulce

33.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 32.

34.     Plaintiff was employed by Defendant Dulce under a written, oral and/or implied contract of employment which was modified and re-enforced by certain policies, practices, assurances and other express and implied statements of Defendants. In said contract, it was implicitly agreed that Plaintiff would not be impeded in her job duties, and explicitly agreed that she would be terminated only for just cause. Further said contract stated explicitly that should the Plaintiff suffer a serious medical condition and was otherwise entitled to Family Medical Leave she would be allowed to return to work upon the certification of one doctor, that she would not be terminated while on Family Medical Leave, that Plaintiff would not pay for additional examinations required by the employer, and that she would only undergo further examination if her current work performance cast doubts on her health status. The contract also stated that Plaintiff would be free of discrimination and her requests for reasonable accommodation and reasonable accommodation negotiation would be honored. Plaintiff entered into said contract, *inter alia*, to secure peace of mind and financial stability, and refrained from seeking employment elsewhere in reliance thereon.

35.     The Dulce Policy Manual grants these same rights, as it indicates that the District will comply with the Family Medical Leave Act and the regulations interpreting that Act. Policy G-2900, Sections "Family and Medical Leave Act ("FMLA")" and "Position Restoration." Policy G-2933, the Exhibit to G-2900 providing the employee handout regarding "Your Rights Under the Family and Medical Leave Act of 1993," explicitly recognizes that employees have a right to be free of interference and retaliation for taking FMLA leave. Similarly G-2935, another exhibit handout titled "Fact Sheet No. 28: The Family and Medical Leave Act of 1993", Section "Certification" provides that certification at the time of taking the leave may include a second or third certification (not six at the time of return to work), and such certificates will be secured at the employer's expense, and at Section "Unlawful Acts" again provides that claims of FMLA interference and retaliation are availiable when Dulce violates the Act.

36.     Dulce Policy G-6100 "Discipline, Suspension, Termination and Discharge of Professional Staff Members" defines "discharge" as the "act of severing the employment relationship with a certificated school employee prior to the expiration of the current employment contract." The policy goes on to define "Just cause" as "a reason that is rationally related to an employee's competence or turpitude or the proper performance of assigned duties and that is not in violation of the employee's constitutional or civil rights." Dulce Policy G-6100, Section "Discharge Per

22-10A-27, NMSA (1978), Subsection "Notice" further provides that "Upon the Superintendent's determination of the existence of cause to discharge, the Superintendent shall notify the licensed staff member of the intent to recommend discharge. The notice shall state the cause for the recommendation and shall advise the employee of a right to a discharge hearing before the Board. The notice shall be in writing, and shall be provided in accordance with the law for service of process in civil hearings." The policy then goes on to outline a full due process hearing congruent with precedent, including such procedural protections as representation by counsel, discovery, the right to cross-examine witnesses and present evidence, and a speedy determination. The policy further provides an appeal to an independent arbitrator if the discharged employee feels aggrieved by the Board's determination, thus providing an unbiased decision-maker. Dulce Policy G-6100 "Discipline, Suspension, Termination and Discharge of Professional Staff Members," Section "Discharge -- Arbitration Appeal per 22-10A-27, NMSA (1978). Finally, Dulce Policy G-0200 prohibits discrimination against an otherwise qualified individual with a disability.

37.    At all times material hereto, Plaintiff performed her obligations under her contract with Defendants. Defendants breached their express and implied contractual commitments to Plaintiff by terminating her employment without proper cause, and failing to return her to work after her primary physician certified her fitness-for-duty when Plaintiff Cunningham attempted to return her from FMLA. Defendants further breached the contract as specified above and below by failing to provide her with notice and an opportunity to be heard related to her termination, and by retaliating against her due to her complaints and her taking of FMLA.

38.    At the time the parties entered into the contract, as alleged herein above, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, Plaintiff would suffer present and future loss of earnings as a foreseeable and probable result thereof. Further it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, Plaintiff would suffer present and future emotional distress as a foreseeable and probable result thereof.

39.    As a direct and proximate result of Defendants' breach of the contract, Plaintiff in fact has suffered loss of wages and benefits and emotional distress, the full extent and nature of which are presently unknown to her.

40.    Defendants were malicious, reckless, wanton, oppressive, and fraudulent and acted with knowledge of the harm he would cause Plaintiff, when they:
a)     denied her any and all due process related to her termination, despite statutory command and their own policies requiring such process;
b)     failed to return her to work upon certification by her doctor;
c)     failed to honor the requirement of good faith negotiation of a request for reasonable accommodation; and
d)     disobeyed the United States Constitution, *NMSA 1978, Section 22-10A-27*, the FMLA, the ADA, their own policies, and Ms. Cunningham's contract in terminating her.

As a consequence Plaintiff Cunningham is entitled to punitive damages related to this contract claim.

> > > >

## SECOND CAUSE OF ACTION
### 42 U.S.C. Section 1983 Against Each Defendant

> > > >

43.     The actions of all Defendants alleged herein, specifically at paragraphs 7 through 40 above, constitute unlawful discrimination on the basis of disability in violation of the Due Process Clauses of the 5th and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et.seq.*).

44.     The specific actions of all Defendants alleged herein, specifically at paragraphs 7 through 40 above, of following a practice which facially and without rational basis discriminates against persons with disabilities, including specifically the practice of not providing Due Process Hearings to persons with disabilities, constitutes unlawful discrimination on the basis of disability in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and in violation of the Americans with Disabilities Act.

45.     The actions of all Defendants alleged herein, specifically at paragraphs 7 through 40 above, constitute a violation of the right to substantive and procedural due process under the Due Process Clause of the Fourteenth Amendment as a contract of employment is a species of property protected by that clause, and plaintiff's contract of employment has been terminated without any subsequent procedural protections, thus violating the *Loudermill* requirements. Alternatively, Plaintiff Cunningham was singled out for particularly hostile treatment inflicted upon her with malice, ill will, intent, and reckless disregard of her fundamental right to receive notice of her right to due process, and such treatment is sufficient in and of itself to invoke substantive due process as it shocks the conscience. Further, all of these actions and alternative allegations were specifically and illegally and unconstitutionally authorized by a practice or unofficial policy which facially and without rational basis discriminates against persons with disabilities, specifically a practice or unofficial policy which allows persons with disabilities to be terminated without constitutionally-required due process, and in violation of the ADA and FMLA statutes designed to protect persons with disabilities and serious health conditions.

46.     Alternatively, Plaintiff was denied her fundamental right to notice because of an alternative practice of the Defendants.

## ARGUMENT

**The Federal Rules and Binding Precedent Require the Court to Assess the Proportionality of Discovery Recognizing the Primacy of Intent Evidence, the Remedial Nature of the Statutes Involved, and the Comparative Access to**

**Information of the Parties, All of Which Argue for the Broadest Discovery Possible Regarding the Specific Discovery Responses Sought Here.**

Plaintiff's case necessitates broad, proportional discovery herein because her claims involve remedial statutes, are well-established at this early phase of the case even without evidence of intention, and may gain potential damages through discovery into intent, traditional discovery in employment cases.

A.    *The Remedial Nature of the Statutory Claims Allow Broad Discovery,*

Judge Browning has fully laid out the permissible scope of discovery in discrimination cases like this one, emphasizing the remedial nature of the discrimination statutes, as well as the fact that simple fishing expeditions are not allowed:

> **LAW REGARDING DISCOVERY IN EMPLOYMENT-DISCRIMINATION CASES**
> The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense," and information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-15, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964)("The deposition-discovery rules are to be accorded a broad and liberal treatment."); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947). [*7] As a result, these rules "contemplate[] discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broadcasting. Inc.*, 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.).
>
> This standard reflects the fact that relevance for discovery purposes is broader than the scope of admissible evidence for trial purposes. *See EEOC v. University of Phoenix. Inc.*, Civ. No. 05-1048, 2007 U.S. Dist. LEXIS 34202, at *8-9 (D.N.M. Apr. 10, 2007)(Browning, J.). Moreover, in employment-discrimination cases, the scope of discovery is very broad. *See id.* at *9-10 (relying, in part, on *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975)). "In *Rich v.*

*Martin Marietta Corp.*, the [United States Court of Appeals for the] Tenth Circuit noted that the purpose of Title VII is the 'elimination of employment discrimination' and added that '[i]t cannot be said, therefore[,] that the policy of this court has been to narrowly circumscribe discovery in EEOC cases.'" *EEOC v. University of Phoenix. Inc.*, 2007 U.S. Dist. LEXIS 34202, at *10 (quoting *Rich v. Martin Marietta Corp.*, 522 F.2d at 343-44). Although "[a] plaintiff may be allowed extensive discovery," the "desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 981 (10th Cir. 1996). While "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility," the concept of relevance "should not be misapplied so as to allow fishing expeditions in discovery." *Martinez v. Cornell Corrs. of Tex.*, 229 F.R.D. 215, 218 (D.N.M. 2005)(Browning, J.). A party objecting on the basis of overbreadth bears the burden of establishing that the request is overbroad. *See Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991).

*Clayton v. Vanguard Car Rental U.S.A., Inc.*, No. CIV 09-0188 JB/ACT, 2009 U.S. Dist. LEXIS 124548, at *6-8 (D.N.M. Dec. 15, 2009).

All of the discovery Plaintiff seeks to compel here bears on the issue of intention herein, and all of the sought discovery bears on Plaintiff's recovery in the case. *See, above, at 3-5.* The retaliation claims in the Second Amended Complaint offer double back-pay and punitive damages. *See Second Amended Complaint, Court File No. 46 at 29-32.* The New Mexico Human Rights, Title VII and FMLA claims offer neither one. *Id. at 32-36.* The contract claim allows punitive damages but only with malicious intent and no attorney's fees. *Id. at 22-23.* Further, none of the sought discovery is unusual in government employment cases, Plaintiff is only requesting past complaints of discrimination and retaliation, and a recent history of DISD's efforts to supply procedural due process where its policies say and promise it must, and Plaintiff clearly received none at all. *See DISD's "Termination" Notice to Plaintiff at Court File No. 46-5 (showing no notice of termination and no notice of due process rights or potential hearing).*

B.  *Plaintiff's Sought Discovery is Not a Fishing Expedition Because Plaintiff's Non-Intention Based Claims Demonstrate Full Viability, and Intention Evidence Will*

11

*Alter Damages.*

Plaintiff's Breach of Contract punitive damages claim depends upon "malicious" intent, and Plaintiff's claim may depend in part on Plaintiff being able to establish that others received better treatment than she did, thus demonstrating that DISD could follow its own policies when it wanted to:

> "Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract." Anderson Living Trust v. ConocoPhillips Co., LLC, 952 F. Supp. 2d 979, 2013 WL 3456913, at *42 (2013) (Browning, J.). The Supreme Court of New Mexico stated in Romero v. Mervyn's, 1989-NMSC-081, 784 P.2d 992, 109 N.M. 249: "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights." 1989-NMSC-081, ¶ 23, 784 P.2d at 998. Punitive damages are not available when they are "predicated solely on gross negligence. In addition to, or in lieu of, such negligence there must be evidence of an evil motive or a culpable mental state." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 25, 880 P.2d 300, 308, 118 N.M. 203 (internal quotation marks omitted). The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted). A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted). The New Mexico Civil Jury Instructions define the elements necessary for an award of punitive damages for a breach of contract as follows:
>
> If you find that __ (*name of party making claim for punitive damages*) should recover compensation for damages, and if you further find that the conduct of __ (*name of party whose conduct gives rise to a claim for punitive damages*) was [malicious], [reckless], [wanton]. [oppressive], or [fraudulent], then you may award punitive damages.
>
> N.M.R.A., UJI 13-861.

*Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1057-58 (D.N.M. 2016)

And lest there be any doubt about the validity of the Plaintiff's breach of contract claim it is clear in New Mexico that government employment manuals can both form and modify government employment contracts:

> New Mexico case law has emphasized the importance of precisely that kind of evidence in determining the existence of contractual obligations in public employment contexts. See Garcia, 1996 NMSC 29, P 10, 121 N.M. 728, 918 P.2d 7 ("Whether an implied employment contract exists is a question of fact, and it may be 'found in written representations[,] . . . in oral representations, in the conduct of the parties, or in a combination of representations and conduct.'") (quoting Hartbarger v. Frank Paxton Co., 1993 - NMSC 029, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993)); Campos de Suenos, Ltd. v. County of Bernalillo, 2001 NMCA 43, P 27, 130 N.M. 563, 28 P.3d 1104 (distinguishing government employment contracts from other forms of government contracts: "As a practical matter, most employment agreements in the public sector are implied-in-fact, rooted in the conduct of the parties and in a maze of personnel rules and regulations, as well as employee manuals that apply generically to all employees"). Garcia emphasized the comprehensive nature of the written personnel policies in finding them sufficient to create contractual obligations by a governmental employer. 1996 NMSC 29, P 13, 121 N.M. 728, 918 P.2d 7. Similarly, in this case, the Manual exhaustively addressed "all phases of Personnel Administration" and was meant to "serve as conditions of employment for all employees of the City of Portales." It covered every aspect of the employment relationship between the city and its employees, including sections relating to the Manual's mission to provide for consistent application of personnel policies, effects of separate labor relations contracts, recruitment, probationary periods, transfer, promotion, holiday pay, salary increases, travel expenses, vacation and sick leave, disciplinary procedures, termination, and grievance procedures. As this Court said in Garcia,"if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it." Id. (citation omitted). Not surprisingly, the city has referred us to no authority which has ever held that a governmental employer's contractual obligations created through an employment manual may be ignored simply because the manual was initially adopted through an ordinance. We see no principled reason to create such an exception here. In fact, the official endorsement of the city's governing body should provide additional safeguards against unintentional or unauthorized incurring of contractual obligations by the city.

< < < <

Moreover, it is important to remember that this case does not involve simply the interpretation of a change of benefits in an ordinance, it involves also the terms of a personnel manual and statements and actions of the parties surrounding the alleged formation of a contract at the time Retirees allege that they accepted an offer made by their employer in connection with their retirement. As this Court observed in Cockrell v. Board of Regents of New Mexico State University, "employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract . . . ." 2002 NMSC 9, P 26, 132 N.M. 156, 45 P.3d 876 (alteration in original) (internal quotation marks and citations omitted). However, even where a personnel manual purports to disclaim any intentions of forming contractual obligations enforceable against an employer, a fact finder may still look to the totality of the parties' statements and actions, including the contents of a personnel manual, to determine whether contractual obligations were created. Id.

*Beggs v. City of Portales*, 2009-NMSC-023, ¶¶ 13-22, 146 N.M. 372, 375-78, 210 P.3d 798, 801-04.

Consideration of all of the above is requested in the context of Plaintiff's Section 1983 claim

for denial of the procedural right to due process, and the fact that DISD clearly violated Plaintiff

Cunningham's clearly established right to due process here, and thus will be able to establish Section

1983 Procedural Due Process liability at the least:

Defendants also argue that qualified immunity is appropriate because "all but the plainly incompetent or those who knowingly violate the law" are entitled to immunity from suit. Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986). At the same time, the Court has stated that "if the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). In this case, the law has been established for thirty years; the Due Process Clause requires the state to provide an opportunity for a hearing whenever a permanent state employee is terminated. Roth, 408 U.S. at 577. Moreover, New Mexico law provides permanent, non-disabled employees a right to appeal their termination. N.M. Stat. Ann. § 10-9-18(A).

While the Defendants' argue that they should not be held liable because they were only enforcing state law, this is only one factor in our analysis. Roska, 328 F.3d at

1253. Defendants in this case were not mere minions obeying commands, but rather were directors and supervisors of the New Mexico SPO. Aplt. Reply. Br. at 1-2. Thus, they have expertise in the hiring and firing of state employees, including relevant state and federal law. <u>Accordingly, we find that the law in question was clearly established and a reasonable director or supervisor of the state SPO would have known that his or her activity violated Ms. Copelin-Brown's constitutional rights.</u>

*Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1256-57 (10th Cir. 2005) (<u>underline added</u>) (where the State statute at issue disallowed constitutional right to due process when someone could not perform their job, that statute was overruled in *Copelin-Brown* and later amended by State Legislature to provide due process for the disabled, and the relevant state statute here, NMSA 22-10A-27 (1978) requires due process for all terminated teachers).

C.   *Even the 2015 Amendment to Rule 26(B) Recognize Informational Asymmetry In Employment Cases, Another Factor Necessitating Broad Discovery Here.*

The Official Comment upon USCS Fed Rules Civ Proc R 26 notes that "informational asymmetry" is a reason for granting broad discovery. Informational asymmetry is present here because the Plaintiff has no access to Defendant's past due process hearing and complaint information, and never could be expected to have such information:

> Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations.

> Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.

> The parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding. A party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party. Many of these uncertainties should be addressed and reduced in the parties' Rule 26(f) conference and in scheduling and pretrial conferences with the court. But if the

parties continue to disagree, the discovery dispute could be brought before the court and the parties' responsibilities would remain as they have been since 1983.

A party claiming undue burden or expense ordinarily has far better information— perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery. The direction to consider the parties' relative access to relevant information adds new text to provide explicit focus on considerations already implicit in present Rule 26(b)(2)(C)(iii). Some cases involve what often is called "information asymmetry." One party—often an individual plaintiff—may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

USCS Fed Rules Civ Proc R 26 (Official Comment on 2015 Amendment).

Because Defendant would have easy access to past complaints about its operations and the acitivities of Superintendent Savage, and due process hearing records if it had simply maintained centralized lists of what complaints had been made against specific employees, and who had received notice of their due process rights, pursuant the Constitution, state statute, and DISD's own policies, evidence essential to the Plaintiff's case should not be excluded from rightful discovery.  As the Comment suggests depriving Plaintiff of evidence the Defendant only ever had would be improper.  While the concept of "information asymmetry" is a relatively new one, it is readily and easily applicable to employment cases, where only the employer has access to some information, and also has the only responsibility to organize the information, and keep what could very well be exculpatory evidence in another employment case:

The plaintiff in a Title VII case, especially in a case of disparate impact, can only form a complete *prima facie* case after it has discovered all of the evidence in the

16

hands of the employer and has had an opportunity to analyze the information. Both courts and academics have noted the informational asymmetry in these cases. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 412 (2010) (Posner, J., Dissenting) (citing Suzette M. Malveaux, *Front Loading and Heavy Lifting: How Pre-Dismissal Discovery Can Address the Detrimental Effect of Iqbal on Civil Rights Cases*, 14 Lewis & Clark L. Rev. 65 (2010)).

*EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 620 n.21 (6th Cir. 2013).

Further, the doctrine of information asymmetry also cuts against any idea that Plaintiff is conducting a fishing expedition. If Defendant is the only one who ever had or could have had the critical information, how is asking it for the information anything but proper discovery if it is both relevant, indeed crucial to Plaintiff's case?

> D.   *Evidence of Past Complaints is Regularly Discoverable and Admissible in Employment Cases, Heightening the Need for Employers to Keep the Evidence if They Expect to Defend Their Actions.*

It is well-established that in an employment discrimination case, other employees' complaints of discrimination and retaliation are discoverable. *See, e.g., Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1423-24 (7th Cir. 1986) (Title VII); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985) (ADEA); *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1532 (11th Cir. 1983) (Title VII); *Morris v. Washington Metropolitan Area Transit*, 226 U.S. App. D.C. 300, 702 F.2d 1037, 1045-46 (D.C.Cir. 1983) (discharge in retaliation for exercising 1st Amendment rights); *Harpring v. Continental Oil Co.*, 628 F.2d 406, 409 (5th Cir. 1980) (ADEA), *cert. denied*, 454 U.S. 819, 70 L. Ed. 2d 90, 102 S. Ct. 100 (1981). *Clayton v. Vanguard Car Rental U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 124548, 10-12, 2009 WL 5851087 (D.N.M. Dec. 15, 2009); *United States v. Bd. of County Comm'rs*, 2009 U.S. Dist. LEXIS 65540, 15-17 (D.N.M. July 27, 2009).

*See also, Johnson v. W.H. Stewart Co.,* 75 F.R.D. 541, 543 (W.D. Okla. 1976) (information that may establish a pattern of discrimination is discoverable).

Going deeper into the matter, the Plaintiff specifically hopes to prove the primacy of retaliatory and discriminatory motivation to Defendant Savage near the specific time of the challenged employment decisions. Thus, Defendants' mutual defense appears to be that discriminatory and retaliatory motive was not a substantial motivating factor of the illegal treatment Ms. Cunningham endured, and that the illegal actions would have occurred, even if those motives did not exist. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S. Ct. 2148 (2003) (for existence of mixed-motive doctrine and jury instruction).   Therefore, the jury will be given the difficult and sensitive task of discerning the importance of Ms. Cunningham's identity as a <u>complaining woman</u> in Defendant Savage's (the sole decision-maker's) mind, presumably while Defendants attempt to downplay that importance at every turn.  This is coupled with the "inherent difficulty of proving a discrimination case" because, as here, the involved statutes require the jury to discern the difference between legal and illegal states of mind, *Allen v. Montgomery County,* 788 F.2d 1485, 1488 (11th Cir. 1986); *Wyatt v. Sec. Inn Food & Beverage, Inc.,* 819 F.2d 69, 71 (4th Cir. 1987); *Mathewson v. Nat'l Automatic Tool Co.,* 807 F.2d 87, 91 (7th Cir. 1986), often using mostly or only circumstantial evidence. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 52 L. Ed. 2d 571, 97 S. Ct. 1885; *Allen,* 788 F.2d at 1488 (11th Cir. 1986); *Caldwell v. National Association of Home Builders,* 771 F.2d 1051, 1057 (7th Cir. 1985); *Downey v. Southern Natural Gas Co.,* 649 F.2d 302, 305 (5th Cir. 1981); *Miller v. Poretsky,* 193 U.S. App. D.C. 395, 595 F.2d 780, 788-797 (D.C. Cir. 1978); *James v. KID Broadcasting Corp.,* 559 F. Supp. 1153, 1155 (D. Idaho 1983) (for necessity of admission of even time-barred similar offense evidence). In such a case, the importance of each piece of evidence

bearing upon Defendant Savage's state of mind, intention, and motivation cannot be over-estimated, and similar offense evidence has regularly been admitted pursuant the motive and intent exceptions to Federal Rule of Evidence 404(b) and approved of by the Tenth Circuit for decades:

> Continuity of motive and intent may be shown by evidence of the conduct of a defendant at times proximate to that charged in the indictment. *Morlan v. United States*, 10 Cir., 230 F.2d 30; *Jones v. United States*, 10 Cir., 251 F.2d 288; *Doty v. United States*, 10 Cir., 261 F.2d 10; *Tandberg-Hanssen v. United States*, 10 Cir., 284 F.2d 331. And such evidence may still be proper though capable of arousing suspicion of the commission of a different crime than the one specifically charged if motivated by the same intent pertinent to the then present inquiry. *Morlan v. United States, supra.*

> *Sanseverino v. United States*, 321 F.2d 714, 716 (10th Cir. 1963).

*Sanseverino* is, of course, a criminal case.  But the admission of evidence of other acts of discrimination to prove discriminatory intent in a specific case has been repeatedly approved of by the Tenth Circuit in discrimination cases as well, though it is sometimes limited by factors such as:

a)    The acts be those of the same supervisor;

b)    The other act evidence be at a not too dis-similar time (before or after) when contrasted with the complained-of events;

c)    The discriminatory events should have been on employer property; and

d)    A limiting instruction be given upon request.

*Mendelsohn v. Sprint/United Mgmt. Co.*, 466 F.3d 1223, 1226-27 (10th Cir. 2006); *Coletti v. Chudd Pressure Control*, 165 F.3d 767, 776 (10th Cir. 1999); *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 560-61 (10th Cir. 1996); *Bingman v. Natkin & Company*, 937 F.2d 553, (10th Cir. 1991), *Spulak v. K-Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987). Indeed the Tenth Circuit's enthusiasm for such other act evidence, led the

United States Supreme Court to reverse the above-cited *Sprint* case precisely because the Tenth Circuit did not remand to the involved trial court for an explicit determination of its reasoning for denying admission of the other act evidence, pursuant Fed. R. Evid. 403, given the four relevant factors specified above. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386-88, 128 S. Ct. 1140, 1146-47 (2008) (*overturned on specified grounds*).

In the above legal context of informational asymmetry, proper and substantiated claims of Defendants' *per se* illegal acts, the relevance and regularity with which employment cases depend upon intent evidence, how can any of these simple discovery requests be considered non-proportional or fishing expeditions? The Defendants had and have control of the requested information. They, not Plaintiff, have failed to keep their records in such a condition that the relevant, usual information can be readily accessed. Any additional work on their part to provide the requested, standard information is their proper and appropriate burden.

WHEREFORE Plaintiff requests that the Court grant this Motion in all regards and enter an Order requiring Defendant DISD:

a)      Produce all evidence of intent relevant to answering the relevant interrogatories and requests for production (Interrogatories Nos. 10, 12, 13, 15 and RFP Nos. 4 and 17 as specifically identified herein at pp. 3-5), given the centrality of intent to Plaintiff's pled claims;

b)      Produce proper documentation and certification of the remaining oral answers provided during the negotiation process prior to the filing of this Motion;

c)      Pay Plaintiff the costs of this motion and its resulting reply; and

d)      Perform any other act that the Court believes will resolve the discovery dispute between Defendant DISD and Plaintiff fairly and equitably, taking into account the centrality of

intent evidence in a discrimination case, *Allen v. Montgomery County*, 788 F.2d 1485, 1488 (11th Cir. 1986); the broad discovery regularly afforded actions enforcing remedial statutes, *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); and the informational asymmetry always present in an employment case. *See EEOC v. Peoplemark, inc.*, 732 F.3d 584, 620 n.21 (6th Cir. 2013). (meaning different than the usual case, employment cases traditionally involve a situation where the employer has full access to relevant information and considerable incentive to preserve that information, including statutory command, best Human Resources practice, and the power to preserve all evidence of their lawful actions to defeat groundless claims.

Respectfully submitted:

_____/S/ George Geran_____
George Geran, Esq.
Law Offices of George Geran
4129 S. Meadows Road #1017
Santa Fe, New Mexico 87507
Phone: 505-983-1085
Email: Geranlaw@aol.com
Attorney for Plaintiff

## Certificate of Service

I hereby certify that a true and complete copy of "Plaintiff's Second Motion to Compel DISD Discovery Responses" was served on counsel of record for the School District, and counsel of record for Defendant Savage by email at chelms@cuddymccarthy.com and gcoppler@coppler.com on January 11, 2018 through the Court's e-filing system.
.

_____/S/ George Geran_____

21